IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

CARI A. TEEGARDEN, )
)
Plaintiff, )
)
v. ) Case No. CIV-08-320-JHP
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Cari A. Teegarden (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42

U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on November 10, 1968 and was 37 years old at the time of the entry of the ALJ's decision. Claimant completed her high school education and attended college. Claimant has worked in the past as an office assistant, office manager, and cosmetologist. Claimant alleges an inability to work beginning May 1, 1999 due to limitations caused by fibromyalgia and migraine headaches.

### Procedural History

3

On May 24, 2001, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act and supplemental security income benefits pursuant to Title XVI of the Social Security Act (42 U.S.C. § 1381, *et seq.*). Claimant's application was denied initially and upon reconsideration. On August 22, 2006, a hearing was held before ALJ Michael Kirkpatrick in Hugo, Oklahoma. By decision dated December 6, 2006, the ALJ found that Claimant was not disabled during the relevant period. On July 1, 2008, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing and retained the residual functional capacity to perform her past relevant work as an office assistant and office manager as well as her work as a cosmetologist.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) failing to properly consider the opinion of her treating physician; (2) violating the Appeals Council's remand order by failing to call a

medical expert at the hearing; (3) ignoring all records from two physicians; (4) engaging in an improper credibility analysis; (5) failing to make specific findings regarding the mental and physical demands of Claimant's past relevant work; (6) failing to include all of Claimant's limitations in the hypothetical questions posed to the vocational expert at the hearing.

**Treating Physician's Opinions**

Claimant asserts the ALJ improperly rejected the opinions of her treating physician, Dr. Easwar M. Sundaram, Jr., a neurologist. Dr. Sundaram began seeing Claimant on August 18, 1999. Dr. Sundaram found Claimant's neck to have "limited range of motion with pain on flexion, extension and side-to-side motion." Claimant experienced "the most significant tenderness . . . in the paracervical region and in the trapezius, more on the left side where there appears to be muscle spasms." (Tr. 337). Muscle spasms continued through 2000 with Dr. Sundaram providing various treatment, including trigger point injections, medications, and the use of a TENS unit. (Tr. 323-25, 332, 450-58, 460-61).

Dr. Sundaram treated Claimant an additional three times in 2001. (Tr. 322, 445-48). In an October 10, 2001 visit, Dr. Sundaram provided a letter which stated Claimant suffered from fibromyalgia, experiencing "significant pain in the cervical region as well as low back area and also problems with fatigue and

5

tiredness." He concluded Claimant would "be disabled for the foreseeable future and she will need to continue to be off school till (sic) further notice." (Tr. 322).

Claimant continued to see Dr. Sundaram on March 13, 2002. He continued his diagnosis of chronic fibromyalgia with myofascial pain, vascular and tension headaches, and anxiety and depression. (Tr. 444). Claimant's pain was a little better with medication, on which Dr. Sundaram predicted Claimant would remain "on a long-term basis." Id.

On July 31, 2002, Claimant was again evaluated by Dr. Sundaram. He stated Claimant had persistent and worsening problems with pain. Dr. Sundaram also concluded Claimant "satisfies the criteria by the American Rheumatological Association for a diagnosis of fibromyalgia." He reported Claimant also was having trouble with depression for which she was being treated with medication. (Tr. 440). Claimant also received medication for migraine headaches. He concluded that it was his "firm belief" that Claimant suffered from fibromyalgia and that other treatable causes for Claimant's pain had been explored. He expected Claimant to continue to suffer from her condition for the foreseeable future and would remain on medication on a long-term basis. (Tr. 441).

On July 31, 2002, Dr. Sundaram completed a Fibromyalgia Residual Functional Questionnaire. He indicated Claimant's pain

6

occurred in the lumbosacral spine, cervical spine, thoracic spine, shoulders, arm, hands/fingers, hips, legs, bilaterally. He considered the pain initially to be intermittent but was currently constant and severe. He also states on the form that he considered Claimant's claims of pain to be credible and that the pain caused functional limitations. (Tr. 438).

Dr. Sundaram also found Claimant could not have the functional ability to work. He also states on the form that Claimant suffers from severe fatigue and has trouble concentrating. She was predicted to need to be absent from work more than three times per month. He included additional diagnoses for chronic fatigue syndrome and depression/anxiety. Dr. Sundaram noted "marked limitations" as a result of Claimant's conditions. (Tr. 439). Dr. Sundaram continued to treat Claimant through 2006.

In his decision, the ALJ found Dr. Sundaram treated Claimant "relatively infrequently and conservatively." He noted a lack of objective medical findings to support Dr. Sundaram's conclusions of disability and "rather pessimistic opinion." The ALJ found that Dr. Sundaram's opinions were largely based upon Claimant's subjective complaints as opposed to objective medical findings. (Tr. 32-33). The ALJ noted Claimant was found to be doing well in Dr. Sundaram's notes while he made pessimistic findings in the questionnaire he completed on Claimant. (Tr. 33).

7

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict

the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

It appears the ALJ gives little or no weight to Dr. Sundaram's opinions. To his credit, the ALJ does note the standards to be applied in evaluating the weight which a treating physician's opinions should be afforded. Unfortunately, his analysis remains flawed. He characterizes Dr. Sundaram's treatment as conservative but fails to recognize the nature of the condition from which Claimant suffers - namely, fibromyalgia. Claimant was treated rather aggressively with various medications. The ALJ does not indicate what additional treatment could have been rendered such that Dr. Sundaram's actions would be less conservative. Moreover, Dr. Sundaram specifically found limitations on Claimant's range of motion and muscle spasms. He also makes reference to the standards for a diagnosis of fibromyalgia as established by the American

9

Rheumatological Association. Additionally, Dr. Sundaram repeatedly attended Claimant, rendering substantial and continuing treatment to her. The ALJ's characterization of this record of treatment as "relatively infrequent" is curious. The complete rejection of Dr. Sundaram's opinions in light of his status as a treating physician and his history of evaluating Claimant's condition is error. On remand, the ALJ shall re-evaluate the weight to be afforded Dr. Sundaram's opinion.

### Consideration of Appeals Council's Directive

Claimant also contends the ALJ failed to call a medical expert as the Appeals Council ordered be done in its November 17, 2005 remand order. The Appeals Council had the opportunity to direct such testimony in the appeal of the ALJ's current order and did not do so. This Court will not, therefore, order compliance with that body's order. However, considering the extended period of time that has passed since Claimant was last evaluated, the ALJ should consider whether further medical evaluation is prudent in light of Soc. Sec. R. 96-6p.

### Medical Records of Drs. Lee and Truly

Claimant next contends the ALJ ignored the medical records of Drs. Lee and Truly. Dr. Lee, who also appears to be a treating physician of Claimant, recorded Claimant's continuing problems with debilitating migraine headaches. (Tr. 207-272). Dr. Truly found

Claimant to suffer from edema. (Tr. 316, 410, 446). The ALJ failed to recognize these medical opinions and treatment records in his decision. This deficiency represents error in both the ALJ's picking and choosing the medical evidence which only supports his findings of non-disability but also ignoring evidence which supports Dr. Sundaram's opinions. Briggs v. Massanari, 248 F.3d 1235, 1239 (10th Cir. 2001). On remand, the ALJ shall consider Dr. Lee's and Dr. Truly's medical records.

### Credibility Evaluation

Claimant also challenges the propriety of the ALJ's credibility evaluation. The ALJ found a lack of observable manifestations of Claimant's claims of pain. (Tr. 34). Certainly, Dr. Sundaram found Claimant suffered from observable muscle spasms which the ALJ failed to recognize in his rejection of Claimant's credibility regarding pain. Since the ALJ must re-evaluate the weight he gave Dr. Sundaram's opinions on remand, he shall also re-evaluate Claimant's credibility in light of Dr. Sundaram's objective medical findings.

### Findings Regarding Demands of Claimant's Past Relevant Work

The ALJ also failed to comply with Soc. Sec. R. 82-62 in making specific findings of the physical and mental demands of Claimant's past relevant work. On remand, he shall engage in the required analysis of this ruling.

### Hypothetical Questions to the Vocational Expert

The ALJ failed to include the limitations of problems with concentration and difficulties with work stress found by Dr. Sundaram. On remand, he shall include such limitations in any question of the vocational expert.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given ten (10) days from the date of the service of these Findings and Recommendations to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Findings and Recommendations within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 28th day of September, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE